**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ONLINE MERCHANTS GUILD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:21-cv-00369-SHR |
| | ) | |
| C. DANIEL HASSELL, | ) | |
| in his official capacity as | ) | |
| SECRETARY OF REVENUE, | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| | ) | |
| Defendant. | ) | |

---

**The Online Merchants Guild's Brief in Support of**
**Motion for Temporary Restraining Order and Preliminary Injunction**

---

**Question Presented**

The Pennsylvania Department of Revenue has sent members of the Online Merchants Guild letters insisting that they register as tax collection agents with the Department because Amazon—not the Guild's members—unilaterally chose to store goods in Amazon's warehouses in the Commonwealth. The letters are a prelude to demands that the Guild's members pay taxes that Amazon—with the Department's approval—refused to collect on Amazon's sales for much of the last decade. The letters warn that, if Guild members do not register within fifteen days, they will face increased years of tax exposure.

1

The question presented is whether the Guild is entitled to a temporary restraining order and preliminary injunction against the Department's registration demands because the Department lacks personal jurisdiction over the Guild's members.

## Background

The Online Merchants Guild is a nonprofit trade association for online merchants, primarily small businesses who supply goods for e-commerce stores like Amazon.com. Through this case, the Guild seeks to protect the interests of its members, whom the Pennsylvania Department of Revenue has begun targeting to clean up a problem of the agency's own making—the hundreds of millions or billions of dollars in tax revenue that the Department let Amazon refuse to collect, but which the Department now wants from someone. Since Amazon is influential, while the Guild's members are not, the Department has decided to pursue them. The same thing is playing out across the country as governments start to tally up the cost of subsidizing Amazon's growth by looking the other way on sales tax collection.[1]

A brief explanation of Amazon's ecosystem is in order. The vast majority of items Amazon sells are sourced from third-party merchants who supply the Fulfilled

---

[1] *See, e.g.*, Harold Brubaker, "California Hits Philly-Area Amazon Seller with $1.6 Million Sales-Tax Bill," *The Philadelphia Inquirer* (November 5, 2019), https://www.inquirer.com/business/california-sales-tax-amazon-seller-philadelphia-business-20191105.html (emphasis added).

by Amazon ("FBA") program.[2] By contrast, Amazon directly sources a smaller share of goods, which the company deems "first-party sales." From the consumer perspective, there is no difference between the two in Amazon's "store."[3] Amazon stores both categories of items in the same warehouses around the country; offers both categories to consumers on equal "Amazon Prime" terms in adjacent listings on Amazon.com; controls the sale and delivery of both; profits from both; and delivers both in the same Amazon boxes on Amazon trucks.[4]

To fulfill orders from its online store, Amazon maintains a network of nearly 200 warehouses around North America.[5] When merchants supply Amazon with FBA goods, Amazon takes possession of the goods at an Amazon warehouse of the company's choosing, and will typically reposition goods around the country.[6] Amazon then chooses which warehouse to ship customer orders from.[7]

---

[2] Declaration of Paul S. Rafelson ¶ 5 (Exhibit 1).

[3] *See* Written Testimony of Jeffrey P. Bezos, U.S. House of Representatives (July 29, 2020), https://assets.documentcloud.org/documents/7009139/Jeff-Bezos-Written-Testimony.pdf (testifying that Amazon.com is "our store" and consumers are the company's "customers").

[4] Rafelson Dec. ¶¶ 3–17. Through FBA, Amazon largely takes suppliers out of the equation as far as consumers are concerned.

[5] Seller Essentials, "Amazon Warehouse Locations," https://selleressentials.com/amazon/amazon-fulfillment-center-locations/; Rafelson Dec. ¶ 7.

[6] Rafelson Dec. ¶ 7; Declaration of Regan Blee ¶ 4 (Exhibit 2); Declaration of J. Scott Moody ¶ 4 (Exhibit 3).

[7] *See* n. 6, *supra.*

The difference between Amazon's first-party and FBA sales is not substance but tax and liability positioning.[8] Starting in 2012, Amazon agreed to collect Pennsylvania sales tax on first-party sales,[9] but refused to collect tax on FBA sales. Why? Well, offering most items in Amazon's store tax-free allowed Amazon to charge lower prices than competitors who did collect taxes.[10]

Amazon's tax posture was not a secret, but something the Department knowingly accepted until 2018.[11] Meanwhile, the Commonwealth has been giving Amazon millions—and offering billions more—in affirmative subsidies to entice Amazon to develop projects in the state.[12] That was all of a piece with Amazon's

---

[8] *See, e.g.*, *Oberdorf v. Amazon.com Inc.*, 818 F. App'x 138 (3d Cir. 2020) (*en banc*) (certifying to Pennsylvania Supreme Court question regarding Amazon's defense that the company was not liable for FBA sales in its store); *Bolger v. Amazon.com, LLC*, 53 Cal. App. 5th 431, 450 (2020) (rejecting Amazon's liability defense because of Amazon's control over sales in its store and role as an "intermediary between an upstream supplier and the ultimate consumer"); *Amazon Services, LLC v. S.C. Dep't of Rev.*, No. 17-ALJ-17-0238-CC (S.C. Admin. Law Ct. Sept. 10, 2019) (rejecting Amazon's argument that it did not have to collect sales taxes on its FBA sales), https://src.bna.com/Leb.

[9] AP, "Amazon.com to Begin Collecting Pennsylvania Sales Tax," *PennLive.com* (August 29, 2012), https://www.pennlive.com/midstate/2012/08/amazoncom_to_begin_collecting.html.

[10] David Dayen, "The 'Amazon Tax' Ruling: Disrupting the Disruptors?," *Capital & Main* (July 10, 2018), https://capitalandmain.com/the-amazon-tax-ruling-disrupting-the-disruptors-0710.

[11] *See* Tom Knapp, "Amazon Will Begin Collecting Sales Tax on Shipments to Pennsylvania," *Lancaster Online* (March 6, 2018), https://lancasteronline.com/news/local/amazon-will-begin-collecting-sales-tax-on-shipments-to-pennsylvania/article_0d380ee6-215b-11e8-a5ed-4b0228b0798f.html.

[12] *See, e.g.*, David M. Kall, "Pennsylvania: Amazon.com to Receive $22.5 Million in State Funding," *McDonald Hopkins* (August 4, 2016),

nationwide strategy. As the House Antitrust Subcommittee concluded after a sixteen-month investigation, "Amazon expanded its market power through avoiding taxes [and] extracting state subsidies."[13]

If that is as far as things went, it might just be a questionable deal for the Commonwealth's citizens and Amazon's competitors whom the Department made play by the rules. But recently the Department has tried to dig out of the hole. Not by pursuing Amazon for the company's back taxes, but by pursuing Amazon's suppliers—non-resident small businesses who lack Amazon's power.

The Department has begun demanding that Guild members register with the agency (as a seeming prelude to tax assessments).[14] The agency warns those who do not comply that the Department will increase the lookback period from *just* January 1, 2019–forward to some earlier start date. According to the Department, Amazon's suppliers are within the agency's jurisdictional reach because storing "inventory [] at a

---

https://mcdonaldhopkins.com/Insights/August-2016/Pennsylvania-Amazon-com-to-receive-22-5-million-in; Andrew Wagaman, "Pennsylvania Offered Amazon up to $4.6 Billion over 25 Years," The Morning Call (describing the Commonwealth's October 2017 proposal to Amazon), https://www.mcall.com/business/mc-biz-amazon-hq2-proposal-lehigh-pennsylvania-sidebar-20181113-story.html; Office of Governor Tom Wolf, "Governor Wolf: Amazon Expansion to Bring 800 Jobs to Allegheny County," (July 30, 2019), https://www.governor.pa.gov/newsroom/governor-wolf-amazon-expansion-to-bring-800-jobs-to-allegheny-county/.
[13] U.S. House of Representatives, Committee on the Judiciary, Subcommittee on Antitrust, Commercial and Administrative Law, "Investigation of Competition in Digital Markets: Majority Staff Report and Recommendations" at 261, https://judiciary.house.gov/uploadedfiles/competition_in_digital_markets.pdf.
[14] Blee Dec. ¶ 7; Moody Dec. ¶ 8.

distribution or fulfillment center . . . constitutes physical presence that creates certain tax obligations with Pennsylvania."[15]

The Due Process Clause is otherwise. Amazon, not the Guild's members, controls whether property is stored in Pennsylvania. And Amazon's unilateral storage choices do not create jurisdictional contacts for the Guild's members. Without jurisdiction over the Guild's members, the Department's actions are "*ultra vires* and void." *Miller Bros. Co. v. Maryland*, 347 U.S. 340, 344–45 (1954).

The Guild appreciates the Commonwealth's need to raise revenue on the basis of fair taxes, but the Department's means exceed its constitutional authority. To the extent Pennsylvania now wishes to collect taxes Amazon previously refused to collect on its sales, the Commonwealth should pursue those taxes lawfully from Amazon, not unlawfully from the Guild's non-resident members. In the meantime, the Court should enjoin the Department's registration demands.

## Standard for Injunctive Relief

A party seeking preliminary equitable relief "must meet the threshold for the first two 'most critical' factors: it must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not) and that it is more likely than not to suffer irreparable harm in the

---

[15] Blee Dec. at 5 (Letter from DOR); Moody Dec. at 6 (Letter from DOR). Merchants in at least the following states have reported receiving similar letters: California, New Jersey, New York, Georgia, Michigan, Florida, South Carolina, and Oklahoma.

absence of preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). Once those requirements are met, "a court then considers the remaining two factors"—possible harm to others from the grant or denial of the injunction, and the public interest. *Id.* The overall question is whether "all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.*

## Argument

Resolving this motion involves two jurisdictional inquiries: (1) Whether the Court has subject-matter jurisdiction to hear this case (the Court does); and (2) whether the Department has personal jurisdiction over the Guild's non-resident members (the Department does not). The primary reason for the former conclusion is that the Guild's challenge is outside the jurisdiction-stripping law that keeps certain tax challenges out of federal courts. The primary reason for the second is that the Department is wrongly basing its assertion of personal jurisdiction on Amazon's storage choices, which violates the Supreme Court's repeated admonition that only a party's own choices, not the unilateral actions of a third party, can support the exercise of personal jurisdiction.

### a. The Court has jurisdiction to hear this case.

As a foundational proposition, federal courts have "virtually unflagging" jurisdiction to hear federal-question cases like this one. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014). The Tax Injunction Act is a limited restriction: "The district courts shall not enjoin, suspend or restrain the assessment,

levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341.

The TIA does not apply every time taxes are involved, but rather strips jurisdiction in a claim-specific way. *Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1, 11 (2015). The Supreme Court uses a precise, textualist approach to determine whether specific claims implicate the TIA. *See id.*; *id.* at 12 n.1 (distinguishing between claims). The TIA only applies when claims would "stop" the three listed "discrete phases of the taxation process": "assessment, levy, and collection." *Id.* at 2; 8; 15.

By contrast, the TIA does not bar challenges to other aspects of an overall tax system—even where an injunction might secondarily "inhibit" assessment, levy, or collection. *Id.* at 14. Among other things, the TIA does not apply to claims challenging "information gathering" and "reporting" obligations, which are antecedent to and "distinct from" assessment, levy, and collection. *Id.* at 8.

*Direct Marketing Association* squarely permits the Guild's challenges to the Department's registration demand because registration is not an act of assessment, levy, or collection. Instead, registration is akin to the notice and reporting requirements that "precede the steps of 'assessment' and 'collection'" and are therefore outside the TIA. *Id.* at 11. Registration "may improve [a State's] ability to assess and ultimately collect its sales and use taxes from consumers, but the TIA is not keyed to all activities that may improve a State's ability to assess and collect taxes. Such a rule would be inconsistent not only with the text of the statute, but also with

[the Court's] rule favoring clear boundaries in the interpretation of jurisdictional statutes." *Id.* at 11. Thus, the Guild may bring its targeted challenge in this Court.

### b. The Court should decline to abstain.

The Department may ask the Court to decline to exercise its jurisdiction on the basis of the comity doctrine. The Court should reject that request for several reasons. *First*, comity abstention is a prudential basis for declining to exercise the jurisdiction Congress granted, which means the doctrine is "in some tension with the [Supreme Court's] recent reaffirmation of the principle that a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125–26 (2014) (cleaned up); *accord Sprint Communs., Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) ("Federal courts, it was early and famously said, have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given."). That sets a high bar for comity abstention, which the Department cannot meet.

*Second*, the Supreme Court's leading statement on comity provides a roadmap for fairly limited application of the doctrine (to the extent it remains viable). In *Levin v. Commerce Energy, Inc.*, the Court described comity as "embracive," but explained that abstention was justified there only due to a "confluence" of three "considerations" that "[i]ndividually, [] may not compel forbearance on the part of federal district courts." 560 U.S. 413, 431–32 (2010). Those considerations are not present here. *See*

*Z&R Cab, LLC v. Phila. Parking Auth.*, 616 F. App'x 527, 531 (3d Cir. 2015) (directing district court to consider the *Levin* factors).

In *Levin*, the state "enjoy[ed] wide regulatory latitude" over taxation of natural gas tax exemptions, and no "fundamental right[s]" were at issue. *Id.* Here, the Department has no latitude to exceed due process, and the Department is violating the Guilds' members fundamental personal jurisdiction rights—and their right to earn a living. *See also Z&R Cab*, 616 F. App'x at 536 (Ambro, J., concurring) (explaining that comity should not apply in cases involving "individual rights—like the right not to be deprived of property without due process of law—[which] are at the core of § 1983 protection, in areas where federal supervision is particularly important").

*Levin* was also litigation between natural gas companies "to improve their competitive position." *Id.* Not so here.

Last, because *Levin* was an equal protection case, and federal courts are agnostic as between the level-up and level-down equal protection remedies, state courts would be "better positioned than their federal counterparts to correct any violation" because of their superior familiarity with "state legislative preferences." *Id.* Again, not so here. *Accord Z&R Cab.*, 616 F. App'x at 536. *Levin* demonstrates why this is a federal case.

*Third*, additional considerations counsel against abstention. Federal and interstate interests matter because "[c]omity is a two-way street, requiring a delicate balancing of sometimes-competing state and federal concerns." *Trump v. Vance*, 941 F.3d 631, 638 (2d Cir. 2019) (rejecting comity abstention despite state interest in

criminal investigation), *aff'd*, 140 S. Ct. 2412 (2020). Here, the DOR is violating federal law, Guild members' federal rights, and encroaching on the sovereignty of other states. *See Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) (explaining how enforcing the "territorial limitations on the power of the respective States" via personal jurisdiction doctrine protects the "sovereignty of all of [their] sister States"). Comity is no basis for abstention.

### c. The DOR is exceeding its constitutional authority.

On the merits, this motion calls for a fairly straightforward application of due process precedent. The Department contends that it can regulate non-residents because Amazon unilaterally chose to store some goods in Amazon's custody in Amazon's proprietary warehouses.[16] That position is incorrect.

The Due Process Clause constrains all government power in a free society, and state tax authorities are like other state officials: they cannot regulate non-residents over whom the state lacks jurisdiction. The Supreme Court has long enforced "the due process requirement that there be 'some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax.'" *South Dakota v. Wayfair*, 138 S. Ct. 2080, 2093 (2018) (quoting *Miller Bros. Co. v. Maryland*, 347 U.S. 340, 344–45 (1954)). Absent personal jurisdiction, "the imposition of a tax would be *ultra vires* and void." *Miller Bros.*, 347 U.S. at 342. And "the seizure of property by the

---

[16] Blee Dec. at 5 (Letter from DOR); Moody Dec. at 6 (Letter from DOR).

state under pretext of taxation when there is no jurisdiction or power to tax is simple confiscation and a denial of due process of law." *Id.*

"Building on the seminal case *of International Shoe Co. v. Washington*, 326 U.S. 310 (1945), [the Court has] framed the relevant inquiry as whether a defendant had minimum contacts with the jurisdiction such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Quill Corp. v. North Dakota*, 504 U.S. 298, 307 (1992). The Supreme Court has enforced the familiar due process personal jurisdiction standard in tax cases for decades. *See, e.g.*, *Wayfair*, 138 S. Ct. at 2093 (tracing the doctrine to 1954's *Miller Brothers*); *National Bellas Hess v. Dep't of Rev.*, 386 U.S. 753, 756–57 (1967) (same).[17]

According to the Department, Amazon's unilateral decision to store goods in Pennsylvania gives the agency jurisdiction over third-party merchants who earlier supplied those goods to Amazon. But the Supreme Court has repeatedly held that the "unilateral activity of a third party [] cannot satisfy the requirement of contact with the forum State" necessary to establish jurisdiction. *Walden v. Fiore*, 571 U.S. 277, 291 (2014). Rather, the inquiry is whether the putative subject of jurisdiction—the Guild's members—"create[d] a substantial connection with the forum state." *Id.* at 284.

---

[17] *Wayfair* altered the Supreme Court's Commerce Clause jurisprudence as reflected in *Quill* and *Bellas Hess*, while affirming the Court's longstanding Due Process jurisprudence. *Wayfair*, 138 S. Ct. at 2093.

Non-resident Guild members do not deliberately create meaningful contacts with Pennsylvania by participating in Amazon's FBA program. As Regan Blee—a resident of Australia—explains, "I cannot tell Amazon where to warehouse, or not warehouse, goods that Amazon has accepted for sale in its store. Nor can I tell Amazon to ship items or not ship items to customers in specific states."[18] Instead, "Amazon controls the storage and shipment of goods in the FBA program."[19]

At most, participation in FBA creates the possibility that Amazon might unilaterally decide to store goods in Pennsylvania, as opposed to elsewhere among Amazon's nearly 200 facilities. But that is just the discredited "stream-of-commerce" theory of jurisdiction, which a "plurality of Supreme Court Justices has twice rejected," and which the Third Circuit has accordingly "decline[d] to adopt." *Shuker v. Smith & Nephew PLC*, 885 F.3d 760, 780 (3d Cir. 2018) (citing *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 877–85 (2011); *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 108–13 (1987); *D'Jamoos v. Pilatus Aircraft, Ltd.*, 566 F.3d 94 (3d Cir. 2009)).

The upshot of the Department's theory is that Guild members could be subject to nationwide jurisdiction based on Amazon's unilateral and constantly changing storage choices across the continent. But the Third Circuit has rejected such a grasping assertion of power: "efforts to exploit a national market that necessarily included Pennsylvania are insufficient" to create jurisdiction. *Shuker*, 885 F.3d at 780.

---

[18] Blee Dec. ¶ 5; *accord* Moody Dec. ¶¶ 4–7.
[19] Blee Dec. ¶ 4.

Thus, the Department lacks personal jurisdiction over non-resident Guild members based on their FBA participation and cannot demand that they register.

**d. The preliminary injunction factors favor relief.**

*Injunctive* relief is appropriate. *First*, the Guild has far more than a "reasonable chance of success on the merits," which is all that is required. *Reilly*, 858 F.3d at 179 n.3 (explaining that the court does not require even a "more likely than not showing on the merits"). The Department is well outside permissible due process bounds.

*Second*, the Guilds' members will suffer irreparable injury absent an injunction. Their due process rights will be compromised on pain of increased liability exposure. This action does not seek damages, and it is not evident what monetary damages for forced registration would look like, to say nothing of the Eleventh Amendment and qualified immunity issues that would likely arise in a damages action. The secondary effect of compelled registration will be the need to address compelled compliance requirements, which will impose "significant financial and administrative burden[s] on small business[es]" like the Guild's members, and will inhibit "expand[ing]" their businesses and "mak[ing] investments that could be compromised" by the Department's demands.[20] The Guild's members will not be able to recover those meaningful but difficult-to-quantify losses from Director Hassell. More broadly, it will not be possible to unwind the distorting effects on the interstate e-commerce

---

[20] Blee Dec. ¶¶ 8; 11; Moody Dec. ¶¶ 8; 12.

marketplace, which is of unique and paramount federal interest.[21] Only injunctive relief will redress the injuries at issue here.

At first glance, the third factor touches on the best argument against an injunction: the theory that Pennsylvania might, as a second-order effect, lose an indeterminate amount of revenue from merchants who might have registered and later succumbed to tax demands. But that argument puts the cart before the horse by assuming that the Department would have been lawfully entitled to collect *and keep* that revenue in the first place. Plus, if the Department later prevailed in this case notwithstanding an injunction, the agency might be able to seek interest on taxes owed, which could compensate the agency for the delay. Not to mention, nothing prevents the Department from seeking Amazon's taxes directly from Amazon.

Last, it is in the public interest to protect constitutional rights, the national e-commerce economy, and the jurisdictional sovereignty of other states. Taken together, the factors balance in favor of an injunction while this litigation proceeds.

## Conclusion

For the foregoing reasons, the Online Merchants Guild respectfully requests that the Court enjoin the Defendant Hassell from making or enforcing demands that non-resident Guild members register with the Department because of their participation in Amazon's FBA program.

---

[21] Rafelson Dec. ¶¶ 23–27 (describing harms to the merchant community).

Respectfully submitted this 4th day of March 2021.

*s/ Aaron K. Block*

David F. Wilk
ID#65992
Lepley, Engelman, Yaw & Wilk, LLC
140 East Third Street
Williamsport, Pennsylvania 17701
570-323-3768
davew@lepleylaw.com

Aaron K. Block (admitted *pro hac vice*)
The Block Firm LLC
4200 Northside Parkway
Building 1, Suite 200
Atlanta, Georgia 30327
404-997-8419
aaron@blockfirmllc.com

Paul S. Rafelson (*pro hac vice* motion filed)
Rafelson Schick, PLLC
2255 Glades Road, Suite 319
Boca Raton, Florida 33431
833-326-6529
paul@frsattorneys.com
Counsel for the Online Merchants Guild

**Certificate of Service**

I hereby certify that I served the foregoing via the Court's CM/ECF system this 4th day of March 2021.

*s/ Aaron K. Block*
Aaron K. Block