## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ONLINE MERCHANTS GUILD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:21-cv-00369-CCC |
| | ) | |
| C. DANIEL HASSELL, | ) | |
| in his official capacity as | ) | |
| SECRETARY OF REVENUE, | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| | ) | |
| Defendant. | ) | |

---

### The Online Merchants Guild's Pre-Hearing Memorandum

---

Pursuant to the Court's April 19, 2021 Order (Doc. 29), the Online Merchants Guild submits the following memorandum on legal issues to be addressed during tomorrow's hearing.

### Overview

There are two overarching questions for the hearing: Does the Court have jurisdiction? And does the Department? The Guild's answers are, respectively, yes and no.

The Guild moved for preliminary injunctive relief on the basis of its personal jurisdiction argument—*i.e.*, the argument that, under the Due Process Clause, the Department lacks personal jurisdiction over Guild members based on Amazon's

1

decision to store Amazon FBA goods in Amazon's Pennsylvania warehouses.

Without personal jurisdiction, the Department cannot demand that the Guild's

members register with the Department. Yet the Department has sent thousands of

online merchants, including a number of Guild members, letters demanding that they

register with the Department based on Amazon's warehousing choices. The Guild

seeks a preliminary injunction holding that the Department cannot lawfully make

those demands.

The Department has made various arguments in response, which primarily go

to the Court's jurisdiction or adjacent justiciability considerations. As the Guild

explained in its briefing, and will further address at the hearing, the Court has and

should exercise its jurisdiction—and should enter the requested injunction.[1]

### Issues to Address at the Hearing

From the Online Merchants Guild's perspective, the following are the primary

issues the Court will or may need to consider:

1.  **Standing**: Whether the Guild has associational and/or organizational standing.

2.  **Prudential Ripeness**: Whether the Guild's claims are ripe.

---

[1] The Guild's complaint also asserts claims under the Commerce Clause and Internet Tax Freedom Act, 47 U.S.C. § 151, Note. The Guild did not move on those claims (although some of the testimony during the hearing will likely have crossover value with respect to those claims). Given the looming May 8, 2021 registration deadline, the Guild proposes to move stepwise in this case: address justiciability issues and preliminary injunctive relief on the basis of the Due Process Clause first, and then turn to the other claims after further targeted discovery.

3. **Abstention**: Whether the Court should abstain pursuant to the comity doctrine.

4. **The Tax Injunction Act**: Whether the Guild's claims directly seek to enjoin acts of assessment, levy or collection, such that the TIA might apply.

5. **Preliminary Injunctive Relief**: Whether the Guild is entitled to a preliminary injunction prohibiting Director Hassell from making or enforcing demands that Guild members register with the Department based on their participation in Amazon's FBA program, under which Amazon may choose to store FBA goods in Pennsylvania, among many other locations around the country.

***

The Guild will briefly summarize those issues and the Guild's anticipated evidence and arguments.

### 1. Standing

The Guild must have Article III standing—either associational or organizational standing—to bring its claims. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 279 (3d Cir. 2014). The only point of dispute appears to be whether the Guild can meet the injury-in-fact requirement; specifically, whether the Guild's members have experienced such injury, and whether the Guild's mission has been impaired. The Guild intends to demonstrate that its members, and the organization itself, have experienced injury-in-fact.

With respect to its members, in the "pre-enforcement setting," plaintiffs experience injury-in-fact when they "inten[d] to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and there exists a credible threat of prosecution [or other consequences] thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 160 (2014). The Department's letters demand registration and threaten consequences for those who refuse. The Guild intends to show—through the testimony of Guild member J. Scott Moody and the Guild's executive director Paul Rafelson—that Guild members reasonably fear "enforcement actions" and other consequences if they do not comply. *See* Doc. 1-3 at 6 (Department of Revenue's letter to J. Scott Moody's small business, stating that the business would face "additional enforcement actions" if it did not register). Those consequences apparently include exposure to jail time and fines. Because Guild members' fears are "not imaginary or wholly speculative," they have been injured within the meaning of Article III. *Susan B. Anthony List*, 573 U.S. at 160 (cleaned up).

With respect to organizational standing, the Guild intends to show—through the testimony of its executive director Mr. Rafelson—that the organization has been forced to divert organizational resources to address the Department's actions, which has "perceptibly impair[ed]" the Guild's activities on other fronts. *Blunt*, 767 F.3d at 285. That gives the Guild organizational standing in its own right. Thus, the Guild will demonstrate that it has both associational and organizational standing.

## 2. Prudential Ripeness

The Department argues that the prudential standing doctrine bars consideration of the Guild's claims. Setting aside the continuing vitality of that doctrine, *Susan B. Anthony List*, 573 U.S. at 167, the Guild intends to demonstrate that the relevant criteria are "easily satisfied here," *id.* For reasons largely similar to those with respect to injury-in-fact, the parties' interests are adverse; the issues are concrete enough for resolution; and denying review would impose substantial hardship on the Guild's members. *Id.* at 167–68; *accord Abu-Jamal v. Kane*, 96 F. Supp. 3d 447, 458 (M.D. Pa. 2015).

## 3. Abstention

The Department seeks abstention pursuant to the comity doctrine. The question is whether the Department can satisfy its heavy and "heightened" burden of persuasion to justify abstention of the Court's virtually unflagging obligation to exercise its jurisdiction. *Grode v. Mut. Fire, Marine & Inland Ins. Co.*, 8 F.3d 953, 960 (3d Cir. 1993); *Susan B. Anthony List*, 573 U.S. at 167.

Although the burden is on the Department, the Guild anticipates demonstrating that the Court should decline to abstain because the *Levin* considerations and others cut against abstention. In particular, this is a case involving fundamental due process rights and federal interests in the interstate e-commerce economy, which the Commonwealth has no latitude to disregard; state courts are not better positioned than this one to provide redress, and any administrative remedies are

either unavailable or inadequate with respect to at least some of the injuries at issue; and this case is not a controversy between competitors—it arises from preferential treatment of a powerful in-state player as against small outsiders. *See Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 431–32 (2010); *Z&R Cab, LLC v. Phila. Parking Auth.*, 616 F. App'x 527 (3d Cir. 2015). The Guild intends to elaborate on those points with testimony from Mr. Moody, Mr. Rafelson, materials in the public record, and testimony from the Department.

### 4.  The Tax Injunction Act

The Department did not directly challenge the Court's jurisdiction under the Tax Injunction Act. And from the Guild's perspective, the Tax Injunction Act is not in play because the Guild's claims do not directly seek to restrain an act of "assessment, levy or collection." 28 U.S.C. § 1341. Nonetheless, the Guild will be prepared to address the TIA if necessary.

As the Supreme Court explained in *Direct Marketing Association v. Brohl*, 575 U.S. 1 (2015), the TIA only applies where claims seek to directly "stop . . . acts of assessment, levy or collection." By contrast, the TIA does not apply to claims challenging "information gathering" measures, which are "distinct from" and "precede the steps of assessment and collection." *Id.* at 8–9; 11 (cleaned up). That is so even if even if the claims might secondarily "inhibit[]" acts of assessment, levy or collection. *Id.* at 14; *see also id.* at 12 ("Enforcement of the notice and reporting requirements may improve Colorado's ability to assessment and ultimately collect its

sales and use taxes from consumers, but the TIA is not keyed to all activities that may improve a State's ability to assess and collect taxes.").

The Guild framed its Due Process Claim accordingly. Relevant here, the Guild challenges the Department's registration demands, which are analogous to the notice and reporting obligations the *Direct Marketing Association* Court held could proceed in federal district court. *Id.* at 11. The constitutional reasons the Department lacks that authority may parallel those that would limit the Department's powers of assessment, levy and collection, but the Guild's personal jurisdiction claim and requested injunction do not directly target such acts, and are therefore outside the TIA.

The Department's brief did not directly challenge the Court's jurisdiction under the TIA. But the Department also seems to argue that, insofar as the Guild challenges the Department's assertion of power—as reflected in registration demands, not acts of assessment, levy or collection—the TIA could still strip the Court of jurisdiction. The Guild disagrees because *Direct Marketing Association* teaches otherwise; the Court endorsed a strict, text-based reading of the TIA: suits that do not fall within the statutory text—because they do not seek to enjoin acts of assessment, levy or collection—are not barred by the TIA. Thus, any attempt by the Department to sweep the Guild's claims under the TIA should fail.

## 5. Preliminary Injunctive Relief

To obtain an injunction, the Guild must "must meet the threshold for the first two 'most critical' factors: it must demonstrate that it can win on the merits (which

requires a showing significantly better than negligible but not necessarily more likely

than not) and that it is more likely than not to suffer irreparable harm in the absence

of preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).

Next, the Court considers "the remaining two factors"—possible harm to

others from the grant or denial of the injunction, and the public interest. *Id.* The

overall question is whether "all four factors, taken together, balance in favor of

granting the requested preliminary relief." *Id.*

### a.  Likelihood of Success on the Merits

On the merits, the overarching question is the colorability of the following

argument: Amazon's unilateral decision to store goods in Amazon's Pennsylvania

FBA warehouses does not give the Department personal jurisdiction over Guild

members who supplied those goods to Amazon. In other words, participation in FBA

does not create roaming jurisdiction over FBA suppliers in every state where Amazon

decides to store goods for however brief a period of time.

The Guild's legal argument flows from precedent establishing that personal

jurisdiction cannot rest on the "unilateral activity" of parties other than the putative

subject of jurisdiction. *Walden v. Fiore*, 571 U.S. 277, 284–85 (2014). Nor can personal

jurisdiction rest on the stream of commerce carrying a good into a state. *Shuker v.

Smith & Nephew PLC*, 885 F.3d 760, 780 (3d Cir. 2018) (citing *J. McIntyre Mach., Ltd. v.

Nicastro*, 564 U.S. 873, 877–85 (2011); *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S.

102, 108–13 (1987); *D'Jamoos v. Pilatus Aircraft, Ltd.*, 566 F.3d 94 (3d Cir. 2009)).

The Department declined to oppose the legal merits of that argument, and the evidence appears to be undisputed. Through testimony from Mr. Moody and Mr. Rafelson, the Guild intends to demonstrate that Guild members who participate in Amazon FBA do not control where Amazon decides to store goods within the company's vast network of FBA facilities; Amazon does.

Hence, the Department lacks personal jurisdiction over the Guild's members based on their participation in Amazon's FBA program. And because the Department cannot ground personal jurisdiction over Guild members based on Amazon's decision to store goods in the Commonwealth, the Department cannot demand that Guild members register with the Department on that basis. *See South Dakota v. Wayfair*, 138 S. Ct. 2080, 2093 (2018) (citing *Miller Bros. Co. v. Maryland*, 347 U.S. 340, 344–45 (1954), for the proposition that states cannot impose tax obligations on parties over whom they lack personal jurisdiction).

For preliminary injunction purposes, the question is whether the argument's odds are "significantly better than negligible but not necessarily more likely than not," *City of Harrisburg*, 858 F.3d at 179; *see also id.* at n.3. The Guild suggests that its personal jurisdiction argument—which rests on settled precedent and is unopposed on the briefing record—meets that standard. Accordingly, the Guild will argue that it established a likelihood of success on the merits.

### b. Irreparable Harm

The Guild intends to demonstrate—through testimony by Mr. Moody and Mr. Rafelson—that the Guild and its members will suffer irreparable harm absent injunctive relief. That harm takes several forms: the impairment of constitutional rights, which cannot be redressed with damages; intangible business complications and burdens; forgone opportunities; and distorting effects on the national e-commerce marketplace and small businesses who are poorly insulated against those effects.

### c. Impacts on Third Parties and the Public Interest

The Court must consider how the requested injunction might benefit or harm third parties and the public interest. The Guild intends to demonstrate and argue that the public interest will be served by vindicating constitutional rights and mitigating harmful effects on small businesses and the national e-commerce economy.

The requested injunction would not of its own force restrict the Department from collecting taxes from the Guild's members. Without the ability to demand registration, the Department's efforts may be "inhibit[ed]," but federal law permits injunctions that vindicate federal rights despite any such second-order effects. *See Direct Mktg. Ass'nn*, 575 U.S. at 14. Moreover, the requested injunction would not restrict the Department from seeking Amazon's taxes directly from Amazon.

The Guild acknowledges Pennsylvania's interests in state tax matters, but federalism cuts both ways here. Insofar as the Department is exceeding constitutional

bounds on its authority, federalism and the interests of other states and their citizens are served by enforcing those bounds. *See Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) (explaining how enforcing the "territorial limitations on the power of the respective States" via personal jurisdiction doctrine protects the "sovereignty of all of [the] sister States"). Due process also protects national commerce: "[i]f there is a want of due process to sustain the tax, by that fact alone any burden the tax imposes on the commerce among the states becomes 'undue.'" *Quill Corp. v. North Dakota*, 504 U.S. 298, 305 (cleaned up).

Thus, the Guild intends to demonstrate that the preliminary injunction factors favor relief.

### Requested Injunction

Based on the foregoing, the Guild will respectfully request that the Court enter a preliminary injunction prohibiting Defendant Hassell from making or enforcing demands that non-resident Guild members register with the Department because of their participation in Amazon's FBA program.

\*\*\*

Respectfully submitted this 28th day of April, 2021.

*s/ Aaron K. Block*

David F. Wilk
ID#65992
Lepley, Engelman, Yaw & Wilk, LLC
140 East Third Street
Williamsport, Pennsylvania 17701

11

570-323-3768
davew@lepleylaw.com

Aaron K. Block (admitted *pro hac vice*)
The Block Firm LLC
4200 Northside Parkway
Building 1, Suite 200
Atlanta, Georgia 30327
404-997-8419
aaron@blockfirmllc.com

Paul S. Rafelson (*pro hac vice* motion filed)
Rafelson Schick, PLLC
2255 Glades Road, Suite 319
Boca Raton, Florida 33431
833-326-6529
paul@frsattorneys.com
Counsel for the Online Merchants Guild

## Certificate of Service

I hereby certify that I served the foregoing via the Court's CM/ECF system this 28th day of April, 2021.

*s/ Aaron K. Block*
Aaron K. Block