**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ONLINE MERCHANTS GUILD,** | : | **CIVIL ACTION NO. 1:21-CV-369** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **C. DANIEL HASSELL, in his** | : | |
| **official capacity as SECRETARY** | : | |
| **OF REVENUE, DEPARTMENT** | : | |
| **OF REVENUE,** | : | |
| | : | |
| **Defendant** | : | |

## <u>MEMORANDUM</u>

Plaintiff Online Merchants Guild (the "Guild")—a group of merchants who supply various products to Amazon for sale and distribution—asks this court to enjoin the Pennsylvania Department of Revenue (the "Department") from utilizing a voluntary compliance program to identify certain taxes potentially owed to the Commonwealth by nonresident Guild members. The Guild claims this program evinces an assertion of authority over Guild members that violates the Due Process Clause, the Commerce Clause, and the Internet Tax Freedom Act. Before the court are the Guild's motion for a preliminary injunction and the Department's motion to dismiss the Guild's complaint. As explained below, the Guild has standing and its claims are ripe, but we will abstain from hearing them under the comity doctrine.

I.      **Factual Background and Procedural History**

The Guild is "a trade association for online merchants" who supply Amazon and other e-commerce retailers.  (Doc. 1 ¶ 14).  The Department is responsible for collecting sales, use, and income tax in the Commonwealth.  (Id. ¶ 17).  Defendant C. Daniel Hassell is Secretary of the Department.  (Id.)  The dispute *sub judice* stems from the Department's efforts to determine whether nonresident Guild members owe taxes to the Department for goods stored by Amazon within the Commonwealth.

A brief summary of the relationship between Guild members, Amazon, and the Commonwealth will suffice for purposes of the instant motion.  Amazon supplies consumers with its products through two main methods.  It maintains a program called "Fulfilled by Amazon" ("FBA"), through which Guild members supply their products to Amazon for sale.  (See id. ¶ 6).  It also executes "first-party" sales, for which Amazon self-sources goods.  (Id. ¶ 19).  The FBA program is the focus of this action.

The FBA program operates as follows.  Suppliers identify and source products to be sold on Amazon's platform.  (Id. ¶¶ 19-23).  The supplier then ships the products to a fulfillment center chosen by Amazon, which can be located anywhere in the country.  (See id. ¶ 22).  Amazon then takes physical possession of the products, stores them, markets them to consumers, and sells and delivers them without supplier involvement.  (Id. ¶¶ 19-23).  Critically, Amazon has wide latitude to decide which warehouse or fulfillment center to store a supplier's products in.

(<u>See</u> <u>id.</u> ¶¶ 22, 26, 27).  Amazon eventually charges suppliers a commission on the sale of their products.  (<u>Id.</u> ¶ 23).

The Guild alleges that Amazon declined to collect sales tax on its FBA sales for "much of the last decade," thereby enabling Amazon to charge artificially lower prices and externalize supply chain costs.  (<u>Id.</u> ¶¶ 28-30).  In 2017, Pennsylvania's General Assembly passed Act 43, which imposes marketplace sales tax collection, notice, and reporting requirements on e-commerce retailers.  (<u>See</u> <u>id.</u> ¶¶ 36-38).  Amazon began collecting sales tax on its FBA sales in 2018.  (<u>Id.</u> ¶ 37).

As part of its tax-collection efforts, the Department recently began sending Guild members form letters that state in relevant part:

> The Pennsylvania Department of Revenue has determined that your business may have a physical presence in the Commonwealth and may be subject to Pennsylvania's income and sales tax laws.  The Department of Revenue is currently offering a voluntary compliance program to help certain businesses become compliant with past due tax obligations.  This business may be eligible to participate in that program.
>
> Pennsylvania's Tax Reform Code provides that storing property or the property of a representative, including inventory, at a distribution or fulfillment center, or any other location within the Commonwealth, constitutes a physical presence that creates certain tax obligations with Pennsylvania.  Income and applicable sales taxes should be reported and remitted to the Pennsylvania Department of Revenue starting with the date that property was first located within the state.
>
> The voluntary compliance program is offering a limited lookback period from Jan. 1, 2019.  Businesses that choose to participate in this voluntary compliance program will not be liable for taxes prior to this date.  They will also be given penalty relief for any

non-compliance for past due tax returns that were not
filed and taxes that were not paid.

(See id. ¶ 41). The letters then admonish that failure to provide the requested information "will result in additional enforcement actions and the business will forfeit any penalty relief or limited lookback provisions provided by the voluntary compliance program." (See Doc. 1-2 at 5; Doc. 1-3 at 6). To participate in the program, recipients must complete and submit an informational questionnaire by June 8, 2021. (See Doc. 1-2 at 5; Doc. 1-3 at 6).[1] Quite understandably, the Guild interprets these letters as a "precursor to tax demands" upon FBA merchants. (Doc. 1 ¶ 42).

The Guild promptly initiated this action, alleging that the Department's conduct *vis-à-vis* nonresident Guild members violates the Due Process Clause (Count 1), the Commerce Clause (Count 2), and the Internet Tax Freedom Act, 47 U.S.C. § 151 *et seq.* (Count 3). On March 3, 2021, the Guild moved for a temporary restraining order and preliminary injunction on Count 1. The Guild thereafter agreed to withdraw the motion for a temporary restraining order. On April 29, the court held a preliminary injunction hearing, during which the parties presented evidence and argument. Four days later, on May 3, the Department moved to dismiss the Guild's complaint. Both motions are now ripe for disposition.

---

[1] The parties have since agreed to extend the voluntary compliance deadline to June 8, 2021. (See Docs. 40, 42).

II.   **Legal Standard**

A.   **Rule 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a claim for lack of subject matter jurisdiction.  See FED. R. CIV. P. 12(b)(1).  Such jurisdictional challenges take one of two forms: (1) parties may levy a "factual" attack, arguing that one or more of the pleading's factual allegations are untrue, removing the action from the court's jurisdictional ken; or (2) they may assert a "facial" challenge, which assumes the veracity of the complaint's allegations but nonetheless argues that a claim is not within the court's jurisdiction.  Lincoln Benefit Life Co. v. AEI Life, LLC, 800 F.3d 99, 105 (3d Cir. 2015) (quoting CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008)).  In either instance, it is the plaintiff's burden to establish jurisdiction.  See Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  Courts may grant a Rule 12(b)(1) motion based on the legal insufficiency of a claim only when it appears with certainty that assertion of jurisdiction would be improper.  See Gould Elecs. Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000).

B.   **Rule 12(b)(6)**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County

of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents."  Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint, the court conducts a three-step inquiry.  See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded.  Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556.  A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

6

III.    **Discussion**

The Department raises many threshold challenges to the Guild's claims, both in its motion to dismiss and in its opposition to the Guild's motion for a preliminary injunction.  The Department argues that the Guild lacks Article III standing, that ripeness considerations require dismissal, and that the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, bars the Guild's claims.  In the alternative, the Department urges the court to abstain from hearing the Guild's claims based on the comity doctrine.  As we explain below, the Guild has standing, its claims are ripe, and the TIA does not divest us of jurisdiction, but we nonetheless must abstain from entertaining the Guild's complaint on comity grounds.[2]

A.    **Standing**

Article III of the United States Constitution limits federal court jurisdiction to "cases" or "controversies."  U.S. CONST. art. III, § 2.  To establish Article III standing, a plaintiff must demonstrate "(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likel[ihood] that the injury will be redressed by a favorable decision."  Susan B. Anthony List v. Driehaus, 573 U.S. 149, 157-58 (2014) (alteration in original) (internal quotation marks omitted) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)).  Defendants confine their standing argument to the injury-in-fact requirement. (See Doc. 25 at 6-9).

---

[2] The Department also contends that the action must be dismissed for failure to join indispensable parties and for failure to state a claim for which relief may be granted.  Because principles of comity require us to abstain, we need not reach these additional arguments.

A plaintiff sufficiently pleads injury in fact by claiming "he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, Inc. v. Robins, 578 U.S. ___, 136 S. Ct. 1540, 1548 (2016), as revised (May 24, 2016) (quoting Lujan, 504 U.S. at 560); see also Cottrell v. Alcon Lab'ys, 874 F.3d 154, 162-63 (3d Cir. 2017) (citation omitted). "The injury-in-fact requirement is 'very generous' to claimants." Cottrell, 874 F.3d at 162 (citation omitted). Plaintiffs need only allege a "specific, identifiable trifle of injury." In re Horizon Healthcare Servs. Inc. Data Breach Litig., 846 F.3d 625, 633 (3d Cir. 2017) (citation omitted).

Entities may assert two different types of standing: (1) organizational standing (on its own behalf); or (2) associational standing (in a representative capacity).[3] See Pa. Prison Soc'y v. Cortes, 508 F.3d 156, 162-63 (3d Cir. 2007). An entity has organizational standing in its own right when the organization itself suffers injuries as a result of a defendant's allegedly unlawful conduct. Id. at 163 (citing Warth v. Seldin, 422 U.S. 490, 511 (1975); Havens Realty Corp. v. Coleman, 455 U.S. 363, 372-79 (1982); Addiction Specialists, Inc. v. Township of Hampton, 411 F.3d 399, 406-07 (3d Cir. 2005)). An entity can alternatively have associational standing on behalf of its members or constituents. Id. (citing Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 343 (1977); NAACP v. Button, 371 U.S. 415, 428 (1963); Pub. Int. Rsch. Grp. v. Powell Duffryn Terminals, 913 F.2d 64, 70 (3d Cir.

---

[3] Organizational standing is also often called "direct standing," "personal standing," or "individual standing." Associational standing is sometimes referred to as "representative standing."

1990)).  We conclude that the Guild has organizational standing; accordingly, we need not reach the issue of associational standing.

An organization has standing if it can show a defendant's actions "perceptibly impaired" the organization's ability to provide its primary services or carry out its mission and resulted in a diversion of resources.  See Havens, 455 U.S. at 379; see also Fair Hous. Rights Ctr. in Se. Pa. v. Post Goldtex GP, LLC, 823 F.3d 209, 214 n.5 (3d Cir. 2016) (citations omitted); Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 308 (3d Cir. 2014) (quoting Havens, 455 U.S. at 379).[4]  Litigation expenses alone are insufficient to constitute an injury in fact.  See Fair Hous. Council of Suburban Phila. v. Montgomery Newspapers, 141 F.3d 71, 78-79 (3d Cir. 1998).  The Third Circuit Court of Appeals requires "something more," id. at 79, namely, a "concrete and demonstrable injury to [the organization's] activities," id. (quoting Spann v. Colonial Vill., Inc., 899 F.2d 24, 27 (D.C. Cir. 1990)).

At the preliminary injunction hearing, the Guild's Executive Director testified that the Guild primarily serves to educate its members and state and federal legislators, to advocate for policy, and to remediate the perceived power imbalance between Amazon and its suppliers.  (See, e.g., 4/29/21 Hr'g Tr. 75:14-76:12, 77:1-17, 82:18-83:7, 88:2-16).  He explained that the Guild has redirected its efforts and diverted its resources to address the Department's registration-related letters.  (See id. at 84:9-17, 85:19-87:22).  In other words, but for the Department's

---

[4] Although styled as a concurrence in part, Judge McKee's opinion in Blunt serves as the majority opinion as it relates to organizational or personal standing. See Blunt, 767 F.3d at 282 n.52; see also id. at 305-14 (McKee, J., concurring in part).

letters, the Guild would have spent its time, money, and resources furthering its primary aims.  (See id. at 88:2-89:15).  The court finds this testimony to be credible and reliable.  Indeed, as the undersigned recognized at the hearing: "[I]t's clear that there are other places these resources could go."  (Id. at 89:19-20).  The Guild has therefore suffered a cognizable injury separate and apart from its members.

The Department argues that the Guild's diversion of resources is not a justiciable injury because it is "in exact accord with its given purpose, and thus, its ability to fulfill its mission was not frustrated by the sending of the letters."  (Doc. 25 at 7).  Our court of appeals has explicitly rejected this view of within-mission expenditures.  In Blunt, the court of appeals identified the proper question in this context as whether the organization has diverted resources it might have otherwise used elsewhere to combat the defendant's allegedly unlawful conduct.  See Blunt, 767 F.3d at 312-13.  As we have already explained, the Guild has gone to great lengths—not the least of which is the initiation of litigation—to address the Department's letters in lieu of its broader organizational goals.

The Department's attempt to reduce the Guild's claims to a generalized grievance likewise fails.  (See Doc. 25 at 7).  The Guild does not allege harm suffered by "[its] and every citizen's interest in proper application of the Constitution and laws," (id. (citing Lujan, 504 U.S. at 573-74)); it alleges a particularized harm to Guild-member recipients of the Department's registration letter who have allegedly stored property at a distribution or fulfillment center within the Commonwealth, (see Doc. 1 ¶¶ 41-47).  Cf. DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 343-46 (2006) (finding no taxpayer standing to challenge franchise tax credit that allegedly

depleted state coffers).  If challenges to "information gathering" activities by a state are justiciable, see generally Direct Mktg. Ass'n v. Brohl, 575 U.S. 1 (2015), we see no reason why a different result is required in this case involving similar conduct. We conclude that the Guild's alleged harm is adequately particularized for Article III purposes.  It has established organizational standing.

**B.    Ripeness**[5]

The ripeness inquiry examines whether the claim itself is sufficiently mature and properly adjudicable.  See Peachlum v. City of York, 333 F.3d 429, 433 (3d Cir. 2003).  Two fundamental considerations govern a ripeness analysis: "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration."  Abbott Lab'ys v. Gardner, 387 U.S. 136, 149 (1967), abrogated on other grounds by Califano v. Sanders, 430 U.S. 99 (1977).  In preenforcement cases, these considerations require that the parties have sufficiently adverse legal interests; the facts are sufficiently concrete to allow for conclusive legal judgment; and the judgment has utility or renders practical help to the parties.  See Jamal v. Kane, 96 F. Supp. 3d 447, 458 (M.D. Pa. 2015) (citing Peachlum, 333 F.3d at 435);

---

[5] The Supreme Court has indicated that the prudential ripeness doctrine may be distinguishable from jurisdictional standing doctrines.  See Susan B. Anthony List, 573 U.S. at 167.  Our court of appeals has recognized the Supreme Court's statements, noting that "the prudential components of ripeness may no longer be a valid basis to find a case nonjusticiable."  Plains All Am. Pipeline L.P. v. Cook, 866 F.3d 534, 539 n.3 (3d Cir. 2017).  It has nonetheless explained that ripeness in preenforcement actions "can equally be described in terms of standing."  Id. at 539 (citations omitted).  "To the extent we discuss prudential ripeness factors, our holding does not rest on them; rather, our holding rests on the constitutional requirements of Article III."  Id. at 539 n.3.  In any event, as we explain below, this matter is ripe for review.

see also Jie Fang v. United States, 935 F.3d 172, 186 (3d Cir. 2019) (citing Peachlum,

333 F.3d at 433-34).

      The Guild's claims are ripe for disposition.  The registration letters at issue

have already been distributed and, by the letters' own terms, those who fail to

comply voluntarily may suffer an adverse consequence; namely, they will be subject

to enforcement proceedings and forfeit the tax break and penalty protection offered

to those who voluntarily comply.  These consequences sufficiently establish the

parties' adverse relationship.  They are adequately concrete, and resolution of the

Guild's claims will assist the parties in evaluating the propriety of their respective

actions or inactions.

      **C.**    **The Tax Injunction Act & The Comity Doctrine**

      The TIA provides that "district courts shall not enjoin, suspend or restrain

the assessment, levy or collection of any tax under State law where a plain, speedy

and efficient remedy may be had in the courts of such State."  28 U.S.C. § 1341.  The

statute erects a jurisdictional bar to certain cases involving state taxes.  See Direct

Mktg. Ass'n, 575 U.S. at 15; In re Hechinger Inv. Co. of Del., Inc., 335 F.3d 243, 247

n.1 (3d Cir. 2003) (citations omitted).  As the Supreme Court of the United States

recently explained, however, the TIA does not encompass "all activities" a state

may undertake to assess or collect taxes.  Direct Mktg. Ass'n, 575 U.S. at 11.  Rather,

"information gathering" acts that precede assessment, levy, or collection—like

notice or reporting mandates—fall outside the TIA's scope.  Id. at 8, 11.  Moreover,

the TIA only prohibits relief that "stops" the assessment, levy, and collection of

taxes, not relief that simply "inhibits" them.  Id. at 14.  Thus, to decide whether the

TIA bars the Guild's claims, we must first pinpoint the relief sought.  See Hibbs

v. Winn, 542 U.S. 88, 99 (2004).

The Guild's claims do not attempt to stop the assessment, levy, or collection

of taxes.  Both parties acknowledge throughout their briefing that the Guild's claims

are narrow: it challenges only the Department's registration demands, not any

formal act of taxation.[6]  Indeed, the Department states that "this case is not about

taxes," (Doc. 46 at i), noting that the letters merely provide Guild members with an

opportunity to reduce their potential, future tax liability, (see Doc. 25 at 11; 4/29/21

Hr'g Tr. 108:11-17).  We are not asked to prohibit the Department from assessing,

levying, or collecting taxes, so our jurisdiction is not limited by the TIA.  Accord CIC

Servs., LLC v. IRS, 593 U.S. ___, 141 S. Ct. 1582, 1589-92 (2021) (holding challenge to

---

[6] (See Doc. 1 ¶ 5 (challenging "discrete aspects of the [Department's] actions"); id. ¶ 50 ("Absent personal jurisdiction over them, the [Department] cannot demand that the affected Guild members register with the Department (or succumb to other demands.)"); Doc. 10 at 2 ("The question presented is whether the Guild is entitled to a . . . preliminary injunction against the Department's registration demands because the Department lacks personal jurisdiction over the Guild's members."); Doc. 25 at i ("The only issue actually before this Court is whether the Pennsylvania Department of Revenue had the authority to send a letter to businesses advising that they may be subject to Pennsylvania's income and sales tax laws.")).

reporting requirement with potential downstream tax penalties is permissible under Anti-Injunction Act).[7]

Separate and apart from the TIA, the nonjurisdictional comity doctrine also limits federal courts' ability to hear some tax-related cases.  See Direct Mktg. Ass'n, 575 U.S. at 15.  The doctrine "restrains federal courts from entertaining claims for relief that risk disrupting state tax administration," Levin v. Com. Energy, Inc., 560 U.S. 413, 417 (2010) (citation omitted), as long as state courts offer a "plain, adequate, and complete" remedy, Fair Assessment in Real Estate Ass'n v. McNary, 454 U.S. 100, 116 (1981).  The doctrine's breadth "is more embracive than the TIA," and it "has particular force" when a plaintiff challenges the constitutionality of a state's taxation of commercial activity.  Levin, 560 U.S. at 421, 424.  Undergirding the doctrine are the "Supreme Court's expressed 'respect for state functions' and 'reluctance . . . to interfere with the [state's] fiscal operations.'"  Z & R Cab, LLC v. Phila. Parking Auth., 616 F. App'x 527, 531 (3d Cir. 2015) (nonprecedential)[8]

---

[7] See Rock Creek Oil, Inc. v. La. Dep't of Revenue, No. 2:19-CV-00815, 2019 WL 4413260 (W.D. La. Sept. 13, 2019) (mandatory filing of reports is an "information gathering" activity not barred by TIA); Kemerer v. Hilliard, No. 2:18-CV-374, 2018 WL 3448153, at *2-3 (W.D. Pa. July 17, 2018) (challenges to informational requests not barred by TIA); Thorp v. District of Columbia, 317 F. Supp. 3d 74, 80-82 (D.D.C. 2018) (suit challenging informational summonses not barred by TIA), aff'd, No. 18-7112, 2018 WL 6720512 (D.C. Cir. Dec. 18, 2018); Amazon.com LLC v. Lay, 758 F. Supp. 2d 1154 (W.D. Wash. 2010) (TIA does not bar challenges to state's request for personal information regarding Amazon's customers).

[8] The court acknowledges that nonprecedential decisions are not binding upon federal district courts.  Citations to nonprecedential decisions reflect that the court has carefully considered and is persuaded by the panel's *ratio decidendi*.

(alterations in original) (quoting <u>Levin</u>, 500 U.S. at 421; <u>Great Lakes Dredge & Dock Co. v. Huffman</u>, 319 U.S. 293, 298 (1943)).

The Third Circuit has suggested that district courts contemplating abstention on comity grounds should consider whether

> (1) the challenged law concern[s] "commercial matters over which" the state "enjoys wide regulatory latitude"; (2) the suit requires adjudicating "any fundamental right or classification" to which heightened scrutiny applies; (3) the state courts are "better positioned than their federal counterparts to correct any violation" and provide a remedy; and (4) more than one potential remedy could adequately redress the alleged constitutional defect.

<u>Id.</u> at 531 n.8 (citing <u>Levin</u>, 560 U.S. at 431-32). How to weigh these factors in a given case is left to the district court's discretion. <u>See</u> <u>id.</u> (citing <u>Remington Rand Corp.-Del. v. Bus. Sys. Inc.</u>, 830 F.2d 1260, 1266 (3d Cir. 1987)).

Whether to abstain in this case is a close call. This is not a "run-of-the-mine tax case," <u>see</u> <u>Levin</u>, 560 U.S. at 430, in which the immediate result would typically be either payment or nonpayment of a tax. And unlike some other cases in which courts have abstained on comity grounds, we are not squarely asked to evaluate the government's conduct under state laws or regulations or to choose between a slate of remedies implicating legislative tax preferences to which state courts may be

15

more attuned.[9]  At the same time, the central issues in this case cannot be said to be collateral to the state's taxation scheme.  Cf. Hibbs, 542 U.S. at 107 n.9 (declining to apply comity doctrine to abstain from hearing Establishment Clause challenge to tax credit for parochial schools).

Culled to their essence, however, the Guild's claims *sub judice* are really about the Department's authority and intention to tax nonresident Guild members. The Commonwealth historically has "wide regulatory latitude" regarding its tax policy.  Levin, 560 U.S. at 431-32.  The Guild's claims attempt to undermine this authority and obtain a determination that the Commonwealth is exceeding its constitutional reach:

> The Guild does not challenge the Department's "authority *to send a letter* to businesses advising that they *may* be subject to Pennsylvania's income and sales tax laws." Instead, the Guild challenges what . . . those letters assert—that the Department *has the constitutional power to force the Guild's members to register with the Department and impose those tax obligations on them.*

---

[9] Cf. Thorp, 317 F. Supp. 3d at 82-84 (abstaining because plaintiff's claims required inquiry into permissible scope of district's power to issue summonses); Farneth v. Wal-Mart Stores, Inc., No. 2:13-CV-01062, 2013 WL 6859013, at *2-6 (W.D. Pa. Dec. 30, 2013) (abstaining because, *inter alia*, plaintiff's claim required court to consider whether defendant violated a Commonwealth regulation); UPMC v. City of Pittsburgh, No. CIV.A. 13-563, 2013 WL 5777157, at *4-9 (W.D. Pa. Oct. 25, 2013) (abstaining because adjudication required evaluation of Commonwealth regulations).

(Doc. 26 at 1 (third emphasis added) (internal citation omitted)).[10]  The Guild's

claims are, at bottom, a challenge to the Department's taxation power and process,

and adjudicating them "risk[s] disrupting state tax administration."  Levin, 560 U.S.

at 417 (citing McNary, 454 U.S. 100).[11]  By its own terms, the Guild attempts to stifle

the Department's efforts to effect its chosen tax strategy and determine tax liability

as it relates to Guild members.  A ruling in the Guild's favor would not necessarily

stop taxation, but the reach of the comity doctrine is wide and requires abstention

in cases that even "risk" interfering with the Commonwealth's tax administration.

---

[10] (See also id. at 2 ("The Guild challenges the Department's assertion of
authority, not the mere act of mailing letters."); id. at 13-14 ("Turning to the Guild's
actual theory, there is a large body of law holding that, like every arm of state
government, the Department is restrained by the Due Process Clause's restrictions
on the exercise of personal jurisdiction over non-residents.  In a nutshell here, the
Department lacks the authority to regulate or tax non-residents merely because a
third party like Amazon unilaterally decided to store goods in the Commonwealth
. . . ." (footnote omitted)); Doc. 10 at 11 ("The [Department] is exceeding its
constitutional authority."); id. ("On the merits, this motion calls for a fairly
straightforward application of due process precedent.  The Department contends
that it can regulate non-residents because Amazon unilaterally chose to store some
goods in Amazon's custody in Amazon's proprietary warehouses.  That position is
incorrect." (footnote omitted)); id. at 11-14 (invoking "minimum connection"
requirement in cases involving due process challenges to state taxation schemes)).

[11] See also Kerns v. Dukes, 153 F.3d 96, 102 (3d Cir. 1998) (affirming
abstention in suit seeking to enjoin defendants "*from requiring* members of the class
to connect to the unlawfully created sewer district and *from charging or assessing*
said members of the class for the costs of creating, constructing, maintaining and
operating said sewer district" because, *inter alia*, the action would ultimately
involve court in state tax matters); Kemerer, 2018 WL 3448153, at *2-3 ("The nature
of Plaintiff's allegations 'would require this Court to delve into sensitive matters of
state tax law,' as the state's ability to inspect, audit, and gather information on
individuals and entities 'is clearly intertwined with the [state's] ability to administer
its chosen system of taxation, including its capacity to determine tax liability,
prevent tax fraud, and ensure that its citizens are not shirking their obligations as
local taxpayers.'" (citations omitted)).

<u>Levin</u>, 560 U.S. at 417; <u>see</u> <u>Direct Mktg. Ass'n</u>, 575 U.S. at 8 (describing "information gathering as a phase of tax administration procedure").  Moreover, there is at least the possibility that any ruling in this case regarding the Commonwealth's authority to tax nonresident Guild members would be given *res judicata* effect in later actions challenging the actual tax assessments.

Before we abstain on comity grounds, we must determine whether the Commonwealth provides a "plain, adequate, and complete remedy" to challenge the Department's actions, a standard that parallels the TIA's "plain, speedy and efficient" test.  <u>See</u> <u>McNary</u>, 454 U.S. at 116, 116 n.8; <u>Kerns</u>, 153 F.3d at 101.  That standard requires only that litigants be provided "certain minimal *procedural* criteria" and "a full hearing and judicial determination of the controversy."  <u>Gass v. County of Allegheny</u>, 371 F.3d 134, 137 (3d Cir. 2004) (citations omitted).  As both parties recognize, litigants challenging certain tax-collection obligations and informational requests have historically obtained meaningful review in the Commonwealth's courts.  <u>See</u> <u>Bloomingdale's by Mail, Ltd. v. Commonwealth</u>, 567 A.2d 773, 776 (Pa. Commw. Ct. 1989); <u>Bloomingdale's by Mail, Ltd. v. Commonwealth</u>, 516 A.2d 827, 828-29 (Pa. Commw. Ct. 1986); <u>L.L. Bean, Inc. v. Commonwealth</u>, 516 A.2d 820, 826-27 (Pa. Commw. Ct. 1986).  The Third Circuit has explained in a slightly different context that "Pennsylvania provides a 'plain, adequate and complete' remedy for § 1983 plaintiffs challenging state taxation policies."  <u>Gass</u>, 371 F.3d at 138 (quoting <u>Balazik v. County of Dauphin</u>, 44 F.3d 209, 218 (3d Cir. 1995)) (regarding challenges to tax assessment schemes).

The Guild acknowledges these Pennsylvania cases but speculates that current state procedures create roadblocks to review not present in prior cases. (<u>See</u> Doc. 45 at 6-8.  The Guild thus attempts to color the availability of those procedures as "uncertain," which may counsel against abstention.  <u>See</u> <u>Rosewell v. LaSalle Nat'l Bank</u>, 450 U.S. 503, 516-17 (1981).  Aside from mere speculation, the Guild has not explained—and it is not readily apparent—how existing procedures have made it more or uniquely difficult to challenge the Department's conduct in this case than it was in the Department's cited case law.  <u>See</u> <u>Gass</u>, 371 F.3d at 138. Indeed, we have not been presented with any decision finding the Commonwealth's procedures—or similar procedures in other states—to be legally insufficient.  <u>See</u> <u>Kerns</u>, 153 F.3d at 102 n.8; <u>see also</u> <u>Capra v. Cook Cnty. Bd. of Rev.</u>, 733 F.3d 705, 715 n.7 (7th Cir. 2013).  Neither party suggests that, after passing through the available procedures, the Commonwealth's courts will be unable to hear "any and all constitutional objections."  <u>Rosewell</u>, 450 U.S. at 514.  And we have no reason to believe the avenues described in the relevant state case law are now unavailable.

The Guild also suggests that state remedies are inadequate because its members would have to undergo enforcement to challenge the Department's use of its voluntary compliance program.  (<u>See</u> Doc. 45 at 5-6).  That puts the cart before the horse.  The only pertinent question is whether state procedures reasonably allow the Guild to mount the same type of challenge presented here and obtain meaningful review using state mechanisms, and we have explained above that they do.  It may be that some of the Guild's members will decline to register and will

challenge the program *post hoc*, but that does not mean an adequate avenue is currently unavailable.

The Guild lastly suggests that Amazon's ubiquity makes this a "paradigmatic federal case about federal interests." (See Doc. 45 at 8-9). We reject that argument. This case is not about Amazon or its FBA program; it is about one state's efforts to identify taxes potentially owed by online merchants who, through their business with Amazon, may have a connection to that state. Cf. U.S. Steel Corp. v. Multistate Tax Comm'n, 367 F. Supp. 107, 117 (S.D.N.Y. 1973) (finding "only effective remedy lies in the federal courts," and state remedy is not "plain" under the TIA, because, *inter alia*, state court would be required to rule on constitutionality of sister state's laws and other states may not be bound by resulting order). We therefore find the Guild's invocation of Amazon's national scope unpersuasive.[12]

Ultimately, we are guided by the Third Circuit's and Supreme Court's instruction that "deference should be given to state courts to remedy constitutional violations arising from state revenue-raising laws if adequate state remedies exist." Z & R Cab, 616 F. App'x at 531-32 (citing Levin, 560 U.S. 413; Direct Mktg. Ass'n,

---

[12] The Guild also cites Trump v. Vance, 941 F.3d 631 (2d Cir. 2019), aff'd and remanded on other grounds, 591 U.S. ___, 140 S. Ct. 2412 (2020), for the proposition that federal interests predominate this action. (See Doc. 10 at 10-11). The Guild overextends Trump. In that case, the Second Circuit held that Younger abstention was unwarranted because of the unique federal interest at stake: "We think this is strikingly so when the federal actor is the President of the United States, who under Article II of the Constitution serves as the nation's chief executive, the head of a branch of the federal government." Trump, 941 F.3d at 638. The court's decision was rooted largely in the fact that the suit involved the sitting President, who had "invoked federal jurisdiction to vindicate the superior federal interests embodied in Article II and the Supremacy Clause." Id. (internal quotation marks and citations omitted). The extraordinary facts present in that case are absent here.

575 U.S. 1).  Mindful of that deference, and after careful consideration of the factors relevant to the comity doctrine, the facts of this case, the true aims of the Guild's suit, and the available state procedures, we will abstain from hearing the Guild's challenges to the Commonwealth's voluntary compliance program.

**IV.**   **Conclusion**

We will grant the Department's motion (Doc. 38) to dismiss the Guild's complaint, and we will deny the Guild's motion (Doc. 9) for preliminary injunction as moot.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    May 28, 2021